**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20384-KMW**

**UNITED STATES OF AMERICA**

**vs.**

**JUAN FRANCISCO RAMIREZ,**

**Defendant.**

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government files this memorandum regarding the sentencing of Defendant Juan Francisco Ramirez and recommends that the Court adopt the parties' recommendations set forth in the Plea Agreement (ECF No. 70). The undisputed facts to which the Defendant has admitted through his guilty plea and factual proffer tell the story of a years-long conspiracy orchestrated by the Defendant and his co-conspirators to extract tens of millions of dollars from Nodus International Bank ("Nodus Bank"). The Government respectfully submits that the Defendant's persistent and serious criminal conduct warrants a low-end Guidelines sentence of 151 months, followed by a 20% reduction pursuant to the Government's motion under Section 5K1.1 of the Guidelines.[1]

I.   **Advisory Sentencing Guidelines Calculation**

Consistent with the parties' joint recommendations in the Plea Agreement, the Court should calculate the Guidelines as follows:

|  |  |
|---|---|
| Base Offense Level: | 7 (USSG § 2B1.1(a)(1)) |
| Loss between $9.5 and $25 million: | +20 (USSG § 2B1.1(b)(1)(K))[2] |

---

[1] The Government has separately filed a motion under USSG § 5K1.1. [ECF No. 87, 90].

[2] At the time the parties entered into the Plea Agreement, the Government agreed to recommend a loss greater than $9,500,000 but not greater than $25,000,000 pursuant to USSG § 2B1.1(b)(1)(K), based on the Defendant's ascertainable *gain* of $13,600,000. At that time, the Government was continuing to vet the actual loss caused during the scheme due

1

| | |
|---|---|
| Substantial Hardship | + 2 (USSG § 2B1.1(b)(2)(A)(iii) |
| Sophisticated Means: | + 2 (USSG § 2B1.1(b)(10)(C) |
| Substantially Jeopardized Safety and Soundness of Financial Institution | + 4 (USSG § 2B1.1(b)(17)(B)(i) |
| Abuse of Trust | +2 (USSG § 3B1.3) |
| Total Offense Level: | 37 |

The Court should apply a three-level reduction for acceptance of responsibility, resulting in a final offense level of 34. Given that the Defendant has no criminal history, the Defendant's Guidelines range is 151-188 months. The Defendant is not eligible for the zero-point offender adjustment under USSG § 4C1.1 because he personally caused substantial financial hardship. The Presentence Investigation Report ("PSR") makes the same Guidelines recommendations as those made by the parties in the Plea Agreement, except that instead of the two-level enhancement for abuse of trust, the Probation Office recommends a 4-level aggravating role enhancement under USSG § 3B1.1(a). PSR ¶¶ 109, 122, 179. The Government reiterates its objection to the application of this enhancement and believes that the Defendant's leadership role at Nodus Bank is appropriately addressed by the abuse of trust enhancement.

II. **The Factors Under 18 U.S.C. § 3553(a) Warrant a Low-End Guidelines Sentence of 151 Months.**

    A. **The Nature and Circumstances of the Defendant's Offense and the Defendant's History and Characteristics — § 3553(a)(1)**

As set out in the PSR and in the Defendant's factual proffer, from approximately August 2017 through at least October 2023, the Defendant and his co-conspirators conspired to obtain money and

---

to the case's complex financial flows and series of loan repayments, many of which were funded by fraud proceeds. Following the Plea Agreement, the Government has assessed a *loss* amount attributable to the Defendant of $23,613,372. A calculation based on loss, rather than gain, does not impact the parties' joint Guidelines recommendation.

property through materially false and fraudulent pretenses. The Defendant and his co-conspirators made or caused material misrepresentations to Nodus Bank directors and officers and to Puerto Rico's banking regulator regarding the true nature of several transactions that formed part of a fraudulent scheme against Nodus Bank totaling in the tens of millions of dollars. The Defendant profited directly from the scheme and used the criminal proceeds to fund his lavish lifestyle, a $4 million Miami house, and personal investments in various companies. PSR ¶¶ 80, 87, 98. Those investments included a Venezuelan supermarket chain, a Texas oil and gas company, a Colombian lubricant company, and others. PSR ¶¶ 83, 85, 89, 95, 98(b).

The Defendant was involved in the scheme from the beginning; in fact, the conspiracy's opening transaction involved $2,500,000 in Nodus Bank funds sent to Our Microlending[3] in the form of an "investment" for the Defendant's direct benefit. PSR ¶ 42.

The Defendant's conduct reflects a high degree of willfulness and criminal culpability:

- The Defendant's conduct manifested in at least two schemes (the Our Microlending and Nodus Finance[4] schemes) involving numerous transactions over several years. *See* PSR ¶¶ 35–99.

- The Defendant took steps to conceal his criminal activity. For example, he employed straw borrowers (real individuals or entities acting as nominee borrowers ) to hide the fact that he was obtaining illegal insider loans from Nodus Bank without required regulatory authorization. PSR ¶ 39. He also obtained new fraudulent loans from Nodus Bank (or otherwise used fraud proceeds derived from the scheme) to pay principal or interest due on other outstanding fraudulent loans, all in an effort to

---

[3] Our Microlending is a Miami-based microfinance company owned by the Defendant's co-conspirator Emilio Santandreu. *See* PSR ¶ 29.

[4] Nodus Finance was a Miami-based finance company co-owned by the Defendant and his co-conspirator Tomas Niembro Concha. Nodus Finance was a separate entity from Nodus Bank. *See* PSR ¶ 27.

further his fraudulent schemes and avoid detection from other Bank executives or the Puerto Rican regulator. PSR ¶ 47.

- The Defendant knew that his conduct was illegal. PSR ¶ 37.

- The Defendant helped stage negotiations between Our Microlending's owner Emilio Santandreu and Nodus Bank's comptroller after having pre-determined the outcome of those negotiations with his co-conspirators, including Emilio Santandreu. PSR ¶ 65.

- Even after the Puerto Rico banking regulator notified the Defendant and his co-conspirators that they had to liquidate Nodus Bank in early 2023 due to Nodus Bank's financial crisis, the Defendant and his co-conspirators did not immediately return the fraudulently obtained funds to Nodus Bank; they instead renewed two fraudulent investment certificates with Our Microlending totaling $4,575,000, continuing to fund illegal loans to the Defendant and co-conspirator Tomas Niembro Concha. PSR ¶¶ 73–75.

- In the weeks before Nodus Bank's liquidation process was to begin, the co-conspirators (including the Defendant) caused Nodus Bank to buy a $26 million portfolio of mostly fraudulent or otherwise delinquent loans from Nodus Finance, freeing Nodus Finance of its $25.2 million debt to Nodus Bank and making it more difficult for Nodus Bank's receiver to recover funds fraudulently obtained by the Defendant and his co-conspirators through their schemes. PSR ¶ 91–93.

The Defendant orchestrated several long-running schemes that significantly harmed the financial condition of Nodus Bank, ultimately leading to its voluntary liquidation in May 2023. PSR ¶ 91. In October 2023, Puerto Rico's state banking regulator appointed a receiver and revoked Nodus Bank's license. Many individuals suffered financial harm as a result. *See* Antonio Maria Delgado,

*How a bank's collapse brought grief to hundreds of account holders in Miami and Latin America*, Miami Herald (Mar. 27, 2024), https://www.miamiherald.com/news/local/article286840425.html.

The Defendant is educated, having obtained a bachelor's degree in economics and having entered the United States under an executive visa due to specialized knowledge of the equestrian industry. PSR ¶¶ 145, 157. As described in greater detail in the Government's motion under USSG § 5K1.1, the Defendant was cooperative after being arrested by law enforcement and expressed his intent to accept responsibility and resolve the matter by pleading guilty.

The Defendant's offense conduct was methodical, took place over an extended period, and led to both great personal benefit and Nodus Bank's collapse. The nature and circumstances of the offense weigh in favor of a Guidelines sentence. Given the Defendant's cooperation with the Government and the efforts he has made to assist Driven in recovering funds owed to the Bank by third-party borrowers, the Government recommends a low-end Guidelines sentence of 151 months.

### B.  Purposes of Punishment — § 3553(a)(2)

The Defendant's conduct was serious and substantially affected both a financial institution and its depositors, particularly given Nodus Bank's collapse. *See United States v. Mathauda*, 68 Fed. App'x 805, 807 (11th Cir. Feb. 21, 2017) (weighing heavily the seriousness of a fraud scheme causing $3.5 million in losses to numerous innocent victims).

Regardless of the Defendant's risk of recidivism, the proposed Guidelines sentence deters criminal conduct by others similarly situated. As the Eleventh Circuit has noted,: "[E]conomic and fraud-based crimes" are "more rational, cool, and calculated than sudden crimes of passion or opportunity," and thus these crimes are "prime candidate[s] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal citations omitted). General deterrence is "particularly important in the area of white-collar crime," because would-be perpetrators are watching. *See id*.

Furthermore, the Eleventh Circuit has made clear that general deterrence is especially important in white collar offenses where greed is the motive. Here, the Defendant's criminal conduct diverted tens of millions of dollars from Nodus Bank. The Court should avoid imposing a sentence so low as to convey the message that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *United States v. Hayes*, 762 F.3d 1300, 1310 (11th Cir. 2014).

### C.  A Guidelines Sentence Would Not Result in  Unwarranted Sentencing Disparities Under 18 U.S.C. § 3553(a)(6)

Three other defendants have pled guilty in relation to these schemes. The Defendant's conduct was substantially more serious than that of Emilio Santandreu (who was sentenced to a mid-Guidelines sentence of 34 months after pleading guilty to violating 18 U.S.C. § 371, which was reduced to 22 months due to his substantial assistance; 25-cr-20417) and Jose Gregorio Suarez (who will be sentenced on June 9, 2026, and faces a statutory maximum of 60 months for violating 18 U.S.C. § 371, and who also has a pending motion under USSG § 5K1.1; 25-cr-20548). The Defendant's conduct, for which he pled guilty to violating 18 U.S.C. § 1349, was comparable to his co-conspirator and Nodus Bank co-owner Tomas Niembro Concha (26-cr-20035), whose sentencing hearing is scheduled on August 7, 2026, and likewise faces an agreed-upon Guidelines range of 151-188 months, after applying a 3-level reduction for acceptance of responsibility.

### III.    The Defendant's Cooperation with the Government

The Defendant provided substantial assistance to the Government's investigation. The Government has filed a separate motion under USSG § 5K1.1 to recognize this cooperation and recommends a 20% reduction in his sentence to account for his timely and substantial assistance in the Government's investigation and prosecution of others. Should the Court find the Guidelines

sentence of 151 months appropriate and apply a 20% reduction, this would reduce the Defendant's sentence to 120 months.

**IV.    Conclusion**

The Government respectfully requests a Guidelines sentence of 151 months, prior to consideration of the Government's substantial assistance motion pursuant to USSG § 5K1.1. This would be sufficient, but not greater than necessary, to comply with Section 3553(a).

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:    s/ Felipe Plechac-Diaz
       Felipe Plechac-Diaz
       Assistant U. S. Attorney
       Court I.D. No. 105483
       99 Northeast 4th Street
       Miami, Florida 33132-2111
       Tel. 305-961-9208
       Felipe.Plechac-Diaz@usdoj.gov

MARGARET A. MOESER, CHIEF
MONEY LAUNDERING, NARCOTICS &
FORFEITURE SECTION

By:    s/ Javier Urbina Morante
       Javier Urbina Morante
       Samir Paul
       Trial Attorneys
       Court I.D. No. A5503338
       Court I.D. No. A5503339
       1400 New York Ave. NW
       Washington, DC 20005
       Tel. 202-573-1765
       Javier.Urbina@usdoj.gov
       Samir.Paul@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I further certify that on this 3rd day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.


<u>s/ Javier Urbina Morante</u>
Javier Urbina Morante