UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20384-KMW

UNITED STATES OF AMERICA

v.

JUAN FRANCISCO RAMIREZ,

Defendant.

## PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon motion of the United States for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant Juan Francisco Ramirez (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On September 3, 2025, the United States filed an Information charging the Defendant in Count 1 with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Information [ECF No. 57]. The Information also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1349, the Defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C). *See id.* at 6.

On September 22, 2025, the Court adopted the Defendant's guilty plea to Count 1 of the Information. *See* Minute Entry [ECF No. 69]; Plea Agreement ¶ 1 [ECF No. 70]; Order Adopting Report and Recommendation [ECF No. 74]. As part of the guilty

plea, the Defendant agreed to a forfeiture money judgment in the amount of $13.6 million in U.S. currency. Plea Agreement ¶12.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer [ECF No. 71]. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 1-13. The United States Probation Office has since conducted a presentence investigation, which included information on the Defendant's financial condition. *See* Presentence Investigation Report ("PSR") [ECF No. 77].

Nodus International Bank ("Nodus" or the "Bank") is an International Banking Entity organized under the laws of Puerto Rico. *See* Factual Proffer at 1, [ECF No. 71]. It is regulated by the Puerto Rican Office of the Commissioner of Financial Institutions (Spanish acronym "OCIF") and began operations on or about February 22, 2010. *Id.* In or around May of 2017, the Defendant and his co-conspirator, Tomas Niembro Concha ("Niembro"), bought Nodus. *Id* at 2. The Defendant was a co-owner of Nodus. *Id.* Along with Niembro, they both served as members of the Bank's board of directors. *Id* at 7.

The Defendant and Niembro also owned Nodus Finance LLC ("Nodus Finance"), which is a Miami-based finance company. *Id* at 2. Another Individual S was also the general manager of Nodus Finance from 2013 to September 2024. *Id.* Individual M is the owner and chief executive officer of Entity O, a Miami-based microfinance institution. *Id.*

### The Entity O Fraud Scheme

The Defendant and Niembro wished to use Nodus depositor funds to grant themselves millions of dollars in personal loans, but they knew that Puerto Rican banking laws forbade such shareholder loans. *See* id. To cover their tracks, they turned to Individual M, the owner of Miami-based company Entity O who then agreed, for a fee, to accept millions of dollars in depositor funds from Nodus in the form of investment certificates (comparable to certificates of deposit) as collateral for personal loans to Niembro and the Defendant. *Id.* The Defendant and Niembro concealed the scheme by causing the "investment certificates" from Entity O to appear on Nodus' books as assets without disclosing to the Nodus's comptroller or to the bank's regulator that the investment certificates' purpose was to fund personal loans to themselves. *Id* at 3. Meanwhile, the Defendant and Niembro used those personal loans for their own benefit. *Id.* In particular, on multiple occasions between 2017 and 2023, the Defendant and Niembro conspired with Individual M to place millions of dollars of the Bank's funds in Entity O through the purchase of "certificates of investment" so that Entity O could loan those funds to the Defendant and Niembro for their own benefit. *Id* at 2.

### The Nodus Finance Fraud Scheme

Between January 2018 and September 2021, the Defendant and Niembro caused Nodus to purchase at least 47 promissory notes totaling approximately $25.3 million from Nodus Finance without authorization from OCIF and without performing and repayment analysis. *Id* at 7. Given the Defendant and Niembro's

3

ownership of Nodus Finance, these transactions were considered financings to the Bank's shareholders, which are prohibited by Puerto Rican law without approval from OCIF. *Id.*

The Bank's purchase of each promissory note from Nodus Finance required unanimous board approval. *Id.* The Defendant and Niembro told the Comptroller that the investments in Nodus Finance were part of the Bank's growth and expansion strategy in the U.S. market. *Id.* However, several of the promissory notes that the Defendant and Niembro caused the Bank to purchase from Nodus Finance for millions of dollars during a multi-year period were part of an extensive fraudulent scheme through which the Defendant and Niembro siphoned funds from the Bank to enrich themselves. *Id.*

Specifically, the Defendant and Niembro fraudulently induced the Bank's board and the Comptroller to agree to, or facilitate, the purchase of promissory notes from Nodus Finance based on omissions of material information-namely, the fact that they were using the proceeds of the notes for their own personal benefit, including to make investments in third-party companies, to pay their mortgages, or to cover personal credit card expenses, among other purposes. *Id* at 7-8.

As early as January 2018, Individual S was aware that the Defendant and Niembro were fraudulently obtaining funds from the Bank through the purchase of promissory notes from Nodus Finance and agreed to facilitate the scheme. *Id* at 8. In Individual S's capacity as general manager of Nodus Finance, he prepared fake loan documents and coordinated and executed transactions in furtherance of the various

fraudulent schemes perpetrated through Nodus Finance. *Id.*

### Fraudulent Loans Originated Directly by Nodus

On August 21, 2018, Niembro and the Defendant caused Nodus to fraudulently lend $937,500 to Entity A. *Id* at 11. In fact, Niembro and the Defendant used these funds toward personal investments in several Venezuelan companies, just as they did with the funds they fraudulently obtained from the Bank through Nodus Finance in the form of loans in Entity A's name. *Id.*

On November 14, 2018, the Defendant and Niembro caused Nodus to lend $2,500,000 to the owner of a Colombian oil company, Individual J, but represented to Individual J that these funds were an investment by the Defendant and Niembro in his company. *Id.* In May 2020, after facing pressure from Individual J to remove his name from the loan if the proceeds were in fact intended to be an investment, the Defendant and Niembro caused Nodus to reissue the loan in the name of Entity L, whose owner, Individual P, had agreed with the Defendant and Niembro to serve as a straw borrower to facilitate the investment in the oil company. *Id* at 11-12. The shares that the Defendant and Niembro purchased in the oil company were titled in Entity L's name. *Id* at 12.

Entity W, a Mexico-based company, was a legitimate Nodus borrower, but Niembro and the Defendant obtained loans for themselves from Nodus in Entity W's name without Entity W's awareness. *Id.* In total, the Defendant and Niembro caused Nodus to lend $2,478,500 to Entity W. *Id* at 13. Entity W still owes Nodus $2,659,993.42 in principal, interest, and penalties on the January and March 2022

loans. *Id.*

On January 28, 2022, Niembro and the Defendant caused Nodus to fraudulently lend $1,500,000 to Entity W. *Id.* Two transactions then followed that benefited Niembro and the Defendant:

(a) First on February 4, 2022, without Entity W's knowledge, $200,000 were wired from Entity W's account at Nodus-to-Nodus Finance, and that same day, Nodus Finance issued two checks totaling $255,699.07 to the Defendant's mortgage company. *Id.*

(b) Second, on February 11, 2022, without Entity W's knowledge, $455,800 were wired from Entity W's account at Nodus to Nodus Finance, and a week later, Nodus Finance wired a total of $290,904.75 to Entity K, through which the Defendant and Niembro made a personal investment in a Venezuelan supermarket chain. The identity of Entity K has not been provided by the government. *Id.*

On March 2, 2022, the Defendant and Niembro caused Nodus to fraudulently lend $978,500 to Entity W. Two transactions then followed that benefitted the Defendant and Niembro:

(a) First, on March 10, 2022, Entity W (from its Nodus account) wired $600,000 to Nodus Finance. The next day, Nodus Finance issued a $500,000 check to a law firm as a deposit for a pre-construction home the Defendant was purchasing, and wired $98,870 to the Defendant's personal account, which the Defendant used to pay his credit cards and make an additional

investment in Entity B. *Id.*

(b) Second, on March 17, 2022, Entity W (from its Nodus account) transferred $360,000 to Nodus Finance, and four days later, Nodus Finance wired $359,885 to Entity K, through which the Defendant and Niembro made a personal investment in a Venezuelan supermarket chain. *Id* at 13.

As result of the scheme, the Defendant's personal gain, derived from the offense totaled at least $13,600,000 in U.S. currency. *Id* 2-13.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $13,600,000.00 in U.S. currency is hereby entered against the Defendant.

2.      The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4.      The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

7

Case 1:25-cr-20384-KMW   Document 107   Entered on FLSD Docket 06/05/2026   Page 8 of 8

**DONE AND ORDERED** in Miami, Florida, this ____ day of June 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

8